Our last case for today is PIM Brands v. Haribo, No. 22-2821. Counsel, whenever you're ready. Would you like to reserve some time? You had two minutes, Your Honor. That's granted. May it please the court, my name is Jonathan King and I'm here on behalf of the appellant, PIM Brands. Back in 2003, PIM introduced a line extension of an existing brand of candy known as that product had been on the market for about 10 years. And in order to distinguish this new product from its predecessor product, which actually remains on the market, and also to make this product stand out in what is a very cluttered and competitive candy marketplace, PIM designed a unique look for this product. And it is that unique look, PIM's trade dress, that's the subject of today's proceeding. Now, you agree that even if a feature helps to distinguish something in consumers' minds, as long as there's something functional about it, the functionality defense would say no trade dress protection, correct? No, I actually think these things fall on a spectrum like most aspects of trademark law. It is possible. So, for example, liken this to word marks, right? Word marks that are descriptive need to surmount an additional hurdle to prove secondary meaning. Product design, according to the Supreme Court, also needs always to establish secondary meaning. Now, it is true if a product feature is abundantly functional, clearly is useful, right? No amount of secondary meaning will elevate. Except the statute doesn't say abundantly functional, it just says functional. Right. Functionality defense. So, if it crosses the threshold of functional, then that aspect's not protected. So, it's difficult when you're looking at trade dress, which, according to this court, invariably combines both functional and non-functional features. That's what the American Greeting case said. Sometimes it can be difficult to disaggregate what's functional and what's non-functional. Let's talk specifically here. Am I right that you and your friend on the other side don't disagree that if the shape connoted to customers that this is supposed to taste like watermelon, that that would be useful and not protected? And the argument really is a factual argument about whether this shape, apart from the colors or as an additional item on top of the colors, connotes that to consumers. Is that the nub of the disagreement here? Yes, with some limitations, Your Honor. And I understand what you're asking about. In other words, is it an on-off switch? It's functional. Is it disqualified from protection? But let's look at some other trade dress that's out there, right? So, are you familiar with the common nutter butter, peanut butter cookie? That's a registered trade dress. I can look at that product shape, right, which is sort of a caricature of a peanut. It has the little embossing. But that's a protectable trade dress because It's been registered, but we haven't decided that that's protectable or not. Fair enough. I mean, there are dozens of examples I could invoke. So, to answer Your Honor's question, if it has any connection to the flavor of the product, I'm not sure that's sufficient. Significant, I think, is the word that we've used in our case law. Sure. So, granted, why don't we use that construction? Does the shape significantly communicate the flavor of the product? Where I do agree with Haribo is that the colors communicate the flavor of the product. I would agree that significantly communicating would be enough. You just disagree on these facts, whether this shape significantly communicates it's supposed to taste like watermelon. Exactly. Only the watermelon candies are at issue here. We're not talking about wedge-shaped orange candies or apple ones. I think there was a misapprehension on the district court's part with respect to that issue. So, yes, we defined our trade dress based on our federal trademark registration, which covered both the shape, this trapezoidal shape, and the colors. That doesn't mean that all the other iterations in the other flavors are irrelevant to the analysis. They're relevant for two reasons. The first reason is they help to show the primacy of the shape in PIMMS branding. Also, I'd implore the court to look at pages seven and eight of our brief, where you see a schematic of the trapezoidal shape, and then you see all the color iterations. So, when you see that shape rendered in a limeade flavor, so it has green, nothing about that shape calls to mind watermelon. But we're not adjudicating those. We're asking if this consumer sees this. You know, and the other thing is I think you've all been talking about a singular idealized consumer, but I don't see anything in the law that requires that. It could give you a significant edge if there's a fraction of consumers who say, oh, this looks watermelon-y. Look at that watermelon shape. So, is there anything in the law that requires that to have that effect on all consumers as opposed to a share of consumers? No, I think the standard there is significant. Does it have this significant utility? So, let's look at what... If it gives you an edge with 15% of consumers or something, that'd probably be significant. Well, I don't know, Your Honor. There are all these thresholds in trademark law. So, for instance, for likelihood of confusion surveys, 15% is enough. For secondary meaning surveys, you like to have 40%, right? Whether these things are binding or not, they're sort of the tradition. I don't know because there is no... But it's not 100%. It's not even 50%. It's some minority of consumers. If it gives you an edge in selling to them, that's enough. Well, let me be clear. When you say an edge, an edge... A significant edge. Like, I'm more likely to buy this candy because it really looks like watermelon to me. Well, okay. So, you're talking about purely an edge in identifying what the flavor is. But look, there is an entire market of watermelon candies out there, and we've shown you dozens and dozens of examples. On this record, there are only two parties who use this trapezoidal shape. Pim is the first comer. Haribo is the second comer. And if you'll look at our reply brief, we have, I think, a very revealing graphic. It shows you that among those third parties, some use designs that are clearly the shape is designed to communicate the flavor of the product. They're a slice. They replicate the seeds or that kind of green and white outside of the rind. And then there are sharks and belts and ropes. It has nothing to do with watermelon, right? But a consumer can always tell that those are watermelon candies, right? So, what are the tools in the marketer's arsenal to distinguish its product? It has the name. Well, Sour Jacks was already in use. This is now the Sour Jacks wedge. It has the look of the product and packaging, I should say that. And so, the trapezoid here functions that source-identifying way. And there's so much evidence in the record that supports that, that the district court simply did not consider. But it's not that it does identify the source. It's that it does not also significantly identify the flavor for whatever a significant share of consumers. Sure. So, how do we figure that out? I mean, there's a consumer survey in which somebody said, I like that the shape matches the taste. Why is that not enough? Because that's a consumer survey of 75 people, a non-quantitative, non-projectable survey, not meant, would never satisfy the standards of surveys established by the jurisprudence of this and other courts. It's one out of 75. Okay. So, you got that. How much of this is something that we as a court or the district judge in summary judgment can do? I mean, there's that case, Scott v. Harris. District judge is allowed to watch a videotape, videotape as long as it's uncontested, it hasn't been tampered, not altered, and just look for itself. How much can the district judge look for herself and say, this looks like watermelon? It's not exactly watermelon. It's not exactly the shape or the color, but it's close enough that it's evocative of watermelon. Well, I think the district, I have given a lot of thought to that question, Your Honor, because I've litigated functionality on both sides many times. But what I think the district court cannot do is completely ignore a very lopsided record where both parties, Haribo included, agreed to the exact opposite, right? So — I think your friends will probably disagree when it's their turn, but we'll hear from them. Yes. What did they agree to the exact opposite? So, there's an extensive record here. It's all before the court. It's all meticulously cited. And this is — Sure. If you look, when Haribo adopted the product, right, it needed to make — the internal marketing team needed to make a pitch to management. They said, introduce this to the U.S. market because it will drive sales because of its unique shape. Then they go out and they sell it to brokers, to Target, to Walgreens. And all the marketing pieces we put before the court, two features are touted. It has a unique shape and a unique texture. Then they submit it for an industry award at the Sweets and Snacks trade show, which if you represent clients in this — It's something I've got to go to. It's Willy Wonka on steroids. And they submit it for an innovation award. What do they tout? The unique shape. So, when we confronted Haribo's witnesses with this, was this a critical selling point, that the product had a unique shape? They said, yes, absolutely. And when we asked their director of marketing, have you ever seen a slice of watermelon in this trapezoid shape? She said, well, no. And actually, there is an exhibit in here. It's a Google image search of watermelon. It's always a fun thing to do, right? Nothing looks like a trapezoid. All those pictures, I'm guessing judicial notice extends to common sense. People have seen much. The judge below or we can just look at this and say, this is pretty close to the photos or our experience of watermelon, or it's not. I guess I don't want to say that a judge can never do that. I think a judge certainly can't do that on a record where you have both parties saying this is a unique, distinctive shape, chosen for the purpose of serving as a brand identifier, a differentiator in the marketplace. And consider also the fact that the PTO has twice weighed in on this product configuration. The first is our principal register registration, which claims color. But PTO registrations don't mean a ton. They register lots of things, lots of patents getting invalidated later. So it gives you this presumption true, but it's not like they've done an exhaustive analysis of it. But let me tell you what, look, this court has the authority to undo a registration. I can't that it was applied for before two different examiners. One said, if you're going to claim colors, you need to claim secondary meaning, and that's all the client had sold at that point. And then there's a supplemental registration, which is just for the shape alone. And in neither instance did the examiner ever say, this is functional, this looks like a watermelon. Never did, right? So if this was, to use a colloquial term, if this was such a legal no-brainer that a district judge can say, I'm going to ignore what Haribo said, I'm going to ignore what the PTO said. And those things, by the way, don't get any discussion in the district court's opinion. I'm going to ignore all that stuff. I'm just going to say, I know it when I see it. I don't think that is appropriate on summary judgment. And given the fact that this is a summary judgment motion, inferences are drawn in our favor, and unusually, this is a circumstance where the district court had to determine. Can I stop you for one second? I just want your response. Your adversary on page 10 of PIM does not contest any material facts found by the district court, only the conclusions derived from those facts. Do you agree? No, absolutely not. What we, it's not just that the district court resolved issues of disputed fact. The district court ignored all of this evidence that I'm talking about, right? The registrations, all these admissions of Haribo's, so that is flatly disagreed with, flatly contested. And finally, the second part of the district court's opinion is that protecting this shape, this trapezoidal shape, would inhibit competition. But how can that be when we've shown you dozens and dozens and dozens of third-party designs? But on this record, over this 20-year span where my client's been marketing it, only two merchants have selected the trapezoid shape, right? These are impulse items. They don't need to be the Mona Lisa. They don't need to be an edge. This gives them an edge in being recognizable in the marketplace, right? It's not an edge because it looks like a watermelon. It's an edge because it marks the product as PIMS and PIMS alone. It could be both, but anyway. Judge Brady has a question. You're not arguing that there's a function, excuse me, that there's some sort of technical functionality to the sheet, that this is more about the aesthetics of the product? Although, you know, there is a doctrine of aesthetic functionality. It hasn't been invoked either by the district court or Haribo, and it is the most abstruse doctrine on the planet, so I don't think we need to go there. No, no, no. In fact, you know, the Third Circuit has weighed in on food shapes twice before. The Izaki case, right? It was the stick-like. It's a great case. It's a perfect explication of functionality. Really? I didn't even say that. Oh, well, it's the greatest opinion in the history of jurisprudence. No, but it's all about utility, and so Izaki told the world, you know, we made it this way, right, so you wouldn't get chocolate on your hands, so it would fit in a package, so that it would be easy to hold. Or the Sweet Street Desserts versus Chutley case, right? That's the little pie. You needed a certain number of folds to hold the stuff that's inside the pot. There's no evidence like that in this case. In fact, it's more expensive to manufacture this shape because of the way these products are manufactured. It was chosen, it's been marketed, and it is accepted as a source identifier, not simply a banner that says, oh, this is watermelon. They already know that from the color. Thank you, counsel. We'll hear from your officer. Good morning, Your Honors. May it please the Court. My name is Michael Sukor. I'm from New Jersey. I'm a replacement for Mark Liss, who was, due to a medical issue, unable to attend, and he sends his regrets. I'll do my best to stand in his shoes. Thank you, Your Honor. So, I think Appellant's arguments are an attempt to secure for itself the exclusive right to sell a red, white, and green wedge-shaped watermelon candy. I don't think trademark law allows that. There was some question about what the function was. Certainly, it has a function of conveying to consumers that this candy is going to taste like watermelon when you put it in your mouth. It's shaped like a watermelon. It's colored like a watermelon. But there are also aesthetic functionality is also appropriate to look at here in that there's testimony from Appellant's CEO, Mr. Rosenberg, that it makes the product look better. So, when the product looks better, it looks nicer to eat, then it serves aesthetic functionality also. Trade dress only protects things that are not utilitarian, that protect things that are ornamental or incidental to the design. These things, this is not. This is a red, white, and green color scheme for a watermelon. So, is your argument that the wedge shape itself is functional? Well, I think to answer that, I'd say yes, but that's not. But I think what we would say is that the trade dress has to be taken as a whole. And the trade dress as a whole is the red, white, and green color scheme with the wedge shape. At the district court level, during summary judgment, Appellant tried to broaden the scope of its trade dress, and that was rejected by Judge Arlio. And essentially, their argument is now really still the same thing, that they just want you to look at the shape and determine that it's not functional. But that's not their trade dress. Their trade dress is what's claimed and shown at A145 in the record. It's a gummy candy that's got red, white, and green in the proportion of a watermelon that's shaped like a wedge. So, that's the thing that they have to argue is non-functional. I think if you just look at that, and I think, you know, the concept of common sense is appropriate, you just look at it, you know it's going to taste like a watermelon. But, you know, your friend on the other side is quite right. You can have some functional elements, but then add a non-functional element on top of it. And, you know, so that just means the red, white, and green isn't protectable, and they're not arguing it. The question is, does this additional element, is that also functional? Does that add something significant to it, right? So, I was asking your friend on the other side about this. What's the threshold for significance here? What fraction of consumers? How much? What kind of proof do we need of it? Or is this something that the court just, can apprise or take notice of on its own? So, as your honor pointed out before, there is evidence that this is functional. One responded to a survey. And also from the president of the company that said... You keep quoting that stuff from the president, and the president is just saying in context, I like the look, I like the taste, it looks like watermelon. It could easily be just about the colors. I mean, it's not clear enough that the president is talking about the shape. Okay, and I also wanted to point out, the district court didn't point to this, but at A1133, there's a reference to a consumer survey response that it's just a rip-off of SPK's watermelon. So, I think there's some significant evidence that this looks like a watermelon, which seems obvious. And I think what's also important is that there's no evidence on the other side. There's no survey that says this doesn't look like a watermelon. There's no expert that says this doesn't look like a watermelon. And when you asked for what the evidence was, all of the evidence they pointed to was Haribo's communication about its own product, which is completely not relevant. Haribo's product is not the trade rest that is at issue. The image that's shown at A145, that gummy candy that's red, white, and green in the wedge shape, that's the trade rest that's at issue. What's the effect of what your friend cited that, hey, we're about, your client's saying, hey, we're about to roll something out that's really unique. I mean, it's completely irrelevant, but it's explainable also. I mean, Haribo was launched a product, if you look at the two of them, you can see that the Haribo product is significantly larger. It was a large product that was going to be introduced. And just the fact that it's larger might make it unique, which does make it unique, but it doesn't necessarily make it not functional. It's still a large and unique but functional shape that conveys watermelon. So the uniqueness is not relevant. What's relevant is, is it functional? And I think that Appellant makes kind of a big deal about that they've never seen a real watermelon cut in the shape of a trapezoid. And I think that argument's a little too literal. First of all, trapezoid only came about in litigation. It was called a wedge at the time that they made the registration. And second, it's not whether a real watermelon could be cut into the shape of the tray dress. It's whether the tray dress serves the function of conveying to consumers that it's going to taste like a real watermelon. And if you look at it, at A145, it's hard to imagine that it doesn't. You cite the Swedish fish case from the Southern District of New York, Malaco, I guess it is, Leaf, in support of your argument that tray dress protection here would hinder competition. But in that case, though, there was evidence of 69 other fish-shaped gummy candies, which I find mind-blowing. But in any event, as your adversary points out here, that's not the case here. There's two. I don't necessarily agree with that, Your Honor. I think that in the record, if you look at the third-party shapes that were submitted as a declaration of Mr. Rosenberg at Exhibit A, there's a lot of them that look like 436, 439, 440, 457, 459, 461. So there's plenty of...they may quibble and say that they're not perfect trapezoids. Well, I guess my point is, so why would protecting the wedge shape here hinder competition then? Yeah, I think that because that's the whole idea of tray dresses, that you can't take away something that is non-reputational-based from the general public. It would be unfair for competitors not to be able to sell watermelon candy in a watermelon shape. The fact that there are a couple other watermelon shapes is irrelevant. That's what traffic's taught us. It's a watermelon shape for watermelon candy. If we agree on that, then it seems that it's clear that tray dress wouldn't protect it. Okay. Have you found any authority on this interesting issue I was discussing with your friend about when it's appropriate for courts to step in and use their common sense, their own appraisal at summary judgment, as opposed to like, no, this needs to be left to a jury? So the answer is no. But like you, I thought this is perhaps an issue where a court could take judicial notice, can look at it and say, well, everybody would know this looks like a watermelon. But I also found in the, I think it was the Northern District of California case that appellant cited A6P Payless, that there's some discussion about the common sense of the judge and how that's appropriate to rely on also for determining whether a shape is functional or not. And I just want to, with my remaining time, address this other issue of these tests that are, for example, there's no patent or it's more expensive to manufacture. Those tests aren't relevant in that those tests are designed to show that something is functional. But the absence of those tests doesn't show that something is not functional. Non-functionality kind of has its own separate test. And the Izaaki court rightly pointed that out when it said, on the other hand, a feature is not functional if, for instance, it is merely an ornamental, incidental, or arbitrary aspect of a device. So all of these cases that where sometimes there's functional and non-functional elements protected, the design element is always incidental or just ornamental to the function of the device. So the shape of a Hershey's Kiss. Exactly. I'm a little surprised the case, a different court found that the shape of a gummy fish was functional. And I really don't get that unless it's a fish-flavored candy, which would be very odd. Yes. I didn't get that either. But upon further research, a pair, and that was promotion in motion's argument. I think that fish candy is a common occurrence, like worms. And everybody sells worm candy, and everybody sells fish candy, and children love it. So you have to be able to sell a fish-shaped candy to compete in the fish candy market. That case is probably a little more complicated to understand unless you know candy well. This case is not so hard. Let's go to the point that we're trying to figure out here, then. If we can all wonder how it is that a fish candy can be functional, then aren't these really just questions of fact best reserved for the jury and not something that should be decided at summary judgment? Well, no. But if we're not wondering whether the fish candy is functional, we looked at whether the eye and the scales and the back of the fish served to convey the function of making it look like a fish. And I think that that is something that can be done on judicial notice, it can be done on common sense, and it can be done on the record. And on our record here, there is evidence that the shape conveys the flavor. And again, importantly, there's no evidence that the shape is arbitrary. Even Appellant's President didn't testify that it was an arbitrary shape. His testimony related to what his intention was in creating the shape. But his intention is not relevant. What he did is successfully create a shape that conveys in the mind of consumers that this is going to taste like a watermelon. If you have nothing more, counsel, we thank you. Thank you very much. Okay, thank you. And we'll hear from your friend. Just respond to a few points, Your Honor. First of all, my friend on the other side said, if it's more appealing, then it must be functional. The American Greetings Court specifically said, just because a product feature makes a product more attractive doesn't make it functional. That would be a black hole of a test. At the same time, it says that tummy graphics on a bear could be functional just because it conveys something about the bear's personality. So that's a pretty broad understanding of functionality. Although it then went on to validate the trade dress overall, right? That affirmed an injunction. We don't have a picture of the tummy graphics. I looked back when we had the books. I think I would have been able to see the picture. But apparently certain graphics were associated with certain personalities. So if you wanted to tell the kid, oh, this is the happy bear or this is the grumpy bear, those graphics perform that function. There's nothing like that in this case. With respect to Mr. Rosenberg's testimony, his declaration and multiple statements in his deposition said, this cost me more money to make, but I chose it to serve as a brand identifier. The district court ignored all that and quoted just one line of his testimony where he said, well, sure, it looks like a watermelon, but it looks like my version of a watermelon candy, which is consistent with the position that we're taking in this court today. Let me demystify the Swedish fish case because I litigated it with that gentleman 20 years ago. It was primarily deemed generic because there was a whole industry of fish-making candies there. It was also functional because the way it was created, it had to have a flat back. There was no determination that it was functional because it had scales or eyes. None of those cases, none of these cases are on all fours. But I want to return to Judge Bevis's question because it's intriguing and because I don't have a clear answer for it. But think about some of the tests that you all have set up for us. Look at how, for example, a marketer presents this to the public, right? Izaki, it's easier to hold, or the Chudley's guy, I need to make it, this holds the filling better. A party's intention is relevant, right? Because these are the experts in this industry and they're the ones who know how consumers respond. If it was simply to just convince people this is a watermelon, then no shape matters, because red, white, and green is going to tell them there's a watermelon. If you adopt the district court's logic, then once orange juice has orange on it, or strawberry soda has strawberry on it, the rest of the trade dress falls by the wayside. And I don't think that we want that confined to rule. And that's my presentation. Thank you very much. Thank you, counsel. We thank counsel for their excellent briefing and argument today. We'll take the case under advisement and we'll meet counsel at sidebar and ask that the court be